BRUNSWICK–BALKE–COLLENDER CO. et al. v. BACKUS AUTOMATIC PIN SETTER CO. et al.

(Circuit Court, N. D. Illinois, E. D.    March 15, 1907.)

No. 27,748.

1. PATENTS—INVENTION—IMPERFECT OPERATION OF DEVICE.

The fact that a patented device, designed for a novel use, does not work perfectly does not deprive it of invention where the principle is disclosed, and all that is necessary to its perfection is a more perfect or modified mechanical adjustment of parts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 34.]

2. SAME—INFRINGEMENT—PIN SETTER FOR BOWLING ALLEYS.

The Crawford patent, No. 644,546, for a device for setting pins in a bowling alley, discloses patentable invention, and is valid. Also *held* infringed by the device of the Backus patent, No. 771,963.

In Equity. On final hearing.

Offield, Towle & Linthicum, and ·Charles T. Linthicum, for complainants.

Benjamin T. Roodhouse, for defendants.

KOHLSAAT, Circuit Judge. Complainant files its bill to restrain infringement of claims 1 and 2 of patent No. 644,546, granted to Charles W. Crawford, February 27, 1900, which read as follows, viz.:

"(1) In combination, with the usual, spotted, end portion of the bed of a bowling-alley, a mechanism adapted to receive a set of pins and operating to place the said set of pins on the spots of the alley-bed and then move away, to permit the usual free use of the alley-bed and spotted pins; substantially as set forth.

"(2) In a mechanism for spotting pins on an alley-bed, a carrier adapted to receive a set of pins; means for moving said carrier, and its pins to the proper position to bring the bases of said pins onto their respective spots on the alley-bed; and means for then releasing said pins from said carrier; substantially as and for the purpose set forth."

It will be seen that claim 1 describes a mechanism entirely by reference to its operations, and refers to the specification for all particulars. Claim 2 is more specific, but still dependent almost entirely on the specification. The patent relates to a device for setting up ten pins in proper position with reasonable accuracy—not entirely supplanting the pit-man, but making the work more accurate and more speedy. The record discloses no prior patents nor any prior use. So far as appears, the patentee was a pioneer in the art, such as it is. The pins are placed on the round openings of a frame sustained above the spotted end of a bowling alley in such a manner as to cause the centers of the openings in the frame to coincide with the centers of the spots in a perpendicular line. The openings in the pin-spotter rack, which are made large enough to permit the body of the pin to pass through, carry a device for detaining the pin in the opening until released by another device which frees the pin as it reaches the spot. The frame is mounted between standards, upon which it moves accurately by means of proper guides or pulleys. The weight of the frame is offset by counterweights of somewhat less heft than the frame and its load of pins, so that when the pins are all placed in their respective frame openings—ten in number—it descends automatically to the spots upon the alley. When freed from its burden of pins, it is drawn up out of the way by the counterweights. The commercial article varies somewhat from the device described in the patent, but not essentially. The specification of the patent set out in detail the various steps to be taken as those which the patentee has "so far practiced" in accomplishing his object. He adds:

"Though it may, of course, be carried out in other specific forms of mechanism * * *. Having now so fully described the construction and operation of my new pinsetter, made in that form shown in the drawings, that those skilled in the art can easily understand and practice my invention in either said shown and specific form, or under some modified construction, what I claim as new and desire to secure by letters patent is," etc.

The defendants employ what is termed the "Backus device," which is that, in part at least, of patent No. 771,963, granted to John C. Backus on October 11, 1904. The difference between the two devices, relied on by defendants, consists in: (1) The fact that the Backus spotter requires some manual assistance in making its descent to the spots; i. e., carries a heavier counterweight or its equivalent. (2) The further fact that the openings in the frame for the reception of the pins are not provided with means to keep the pins from falling through, so that they are laid horizontally or nearly so, upon the upper edges of the openings. (3) The further fact that the rack is provided with a movable frame which is tripped by the contact of its long legs with the floor, and in turn throws the pins into a perpendicular position in the rack, whereby they are placed upon the spots. The

153 F.—19

pin-spotter rack is then withdrawn by its counterweights, as in the case of the patent in suit.

· Manifestly, the first alleged difference amounts to nothing. The addition or subtraction of a few pounds of counterweights is of no consequence, and does not even call for the application of the doctrine of equivalents. The other two alleged variations from the device before the court, can be almost literally read upon the claims in suit. Whether they may be deemed equivalents for the apparatus in suit must depend upon the construction to be placed upon complainant's patent. The art is a simple one, and the patent but a short step removed from what may be termed a mechanical advance. It seems to be the fact, however, that a spotter of some kind is welcomed by those indulging in bowling. The conception of the idea of supplying some means for lightening the work and improving the service in bowling alleys along the lines of the devices in suit, belongs, so far as the record discloses, to complainant's grantor. He gave it concrete existence. He first located the rack over the spotted end of the alley, provided with raising and lowering appliances. He first conceived the idea of making the pin-holding openings of the rack coincident in center alignment with the spots. He set out one way in which it could be done, while at the same time he calls attention to the fact that this way was only one of several ways for placing the pins. What he had in mind was the general method, rather than the details. There was nothing new in any of the elements employed. The thing was to make the rack place the pins upon the spots and leave them there.

Defendants' method may be the better way. The patent in suit may even be imperfect in some feature. If, however, it is described in such terms "as to enable any person skilled in the art or science to which it appertains or with which it is most nearly connected, to make, construct, compound, and use the same," it is a full compliance with the statute. If, as contended by defendant, complainant's device failed to release the pins promptly so as to leave them over the spots, or some other element of the combination worked clumsily, yet if the principle was disclosed, and it were apparent that all that was needed was more perfect or modified adjustment of the elements employed in order to make the device effective, the invention might be complete. What the patentee made use of was a recognized means for doing the very thing which defendants' means accomplished. What, if anything, it lacked, required nothing more than mechanical skill to supply. The most that defendant did in any case, was to make an improvement upon a detail of the patent in suit. There are innumerable well known equivalents, which could have been employed for adjusting the pins when they are once brought up to device which will guide them onto the spots.

Taking the whole pin-setter into consideration, I am of the opinion that it was possessed of patentable novelty—of a low order, to be sure, but appreciable—and that such novelty could not be, and was not in any way to be, found in the mere form or apparatus for standing the pins upright in the openings of the pin-setting rack, at any time. There is some contention on the part of defendants that

complainants' device is not operative. It, together with that of defendants, was placed in demonstration before me. The difference in operation of the two was negligible. They both appeared to do what is claimed for them. What defendants conceived was nothing more than the alternative suggested by a consideration of complainants' apparatus.

The infringement is clear, and the prayer of the bill is granted.